# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

MARCO DWAYNE HOUSTON,

                    Petitioner,           :     Case No. 1:14-cv-956

      - vs -                                District Judge Sandra S. Beckwith
                                             Magistrate Judge Michael R. Merz

RON ERDOS, Warden,
 ALLEN/OAKWOOD Correctional Institution,
                                    :
                   Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case, brought pro se by Petitioner Marco Dwayne Houston, is before the Court for decision on the merits on the Petition (ECF No. 1),  the Return of Writ and State Court Record (ECF Nos. 7,8), and the Reply ("Traverse," ECF No. 13).

Petitioner's grounds for relief as pled in the original Petition are:

> **GROUND ONE:** *Fourth Amendment Search and Seizure claim* - The state trial court improperly denied Petitioner Marco Dwayne Houston's ("Petitioner Houston") motion to suppress when the seizure of Petitioner extended beyond the time necessary to effectuate a misdemeanor parking violation pursuant to *Townsend, Bonilla* and their progeny. All evidence obtained thereof by the resultant illegal searches were fruit of the poisonous tree.
>
> **Supporting Facts:** Petitioner Houston was illegally arrested as the result of an unlawful search and seizure under the false premise of a parking violation. Petitioner Houston was ticketed under a local ordinance for parking more than twelve inches from a curb contrary to Ohio Revised Code Section 4511.69 and local Portsmouth (Ohio) City Ordinance 351.04. Petitioner Houston was not in the vehicle, and exited the residence in which the vehicle was parked in front of when

the officers arrived. Petitioner Houston was thereby subjected to a pat down search revealing nothing, and provided the officers identification. A drug dog was brought in while an officer was allegedly calling Petitioner Houston's identification in for verification. Rather than allowing Petitioner Houston to move the car, the officer made Petitioner Houston sit on the grass, alleging that Petitioner Houston kept trying to walk away. The dog alerted on the car, and a search revealed contraband drugs and money.

**GROUND TWO:** *Fifth, Sixth and Fourteenth Amendments Ineffective Assistance of Counsel during suppression phase of state trial court proceeding-* State trial counsel inadequately prepared and ineffectually argued the suppression motion in behalf of Petitioner Houston, and allowed and advised Petitioner Houston to withdraw his no contest plea and to plead guilty thereby waiving the issue.

**Supporting Facts:** At a pretrial hearing before the state trial court, Petitioner Houston balked at pleading guilty; the trial court thereby revoked Petitioner Houston's bond/bail until Petitioner Houston would so plead. When Petitioner Houston sought to terminate his retained counsel and hire new representation, the state trial court refused to allow Petitioner Houston to do so, and even vouched for the attorney alleging that the state trial court had known Petitioner Houston's retained state trial counsel for thirty years. Petitioner Houston initially plead no contest but changed his plea to guilty after said state trial attorney specifically counseled and assured Petitioner Houston that pleading guilty would preserve his right to appeal the suppression at issue just as well as a no contest plea.

**GROUND THREE:** *Fifth, Sixth and Fourteenth Amendments Due Process, Equal Protection of the Law and Double Jeopardy Clause violation claim involving charges of similar import, where state trial court committed plain error in sentencing* - The state trial court was required to merge the multiple offenses at Petitioner Houston's sentencing, pursuant to the Due Process, Equal Protection and Double Jeopardy Clauses and the protected liberty interest of Ohio Revised Code Sections 2941.25 and 2953.08(D)(l), where said offenses were not committed separately or with a separate animus.

**Supporting Facts:** During the sentencing phase of proceedings, the state trial court did not specify, mention, nor was any testimony provided that it found one or more factors demonstrating that the convictions took place at separate times and place, as required by

2

law. Also, the trial court never stipulated that Petitioner Houston's sentence would be imposed under crimes of dissimilar import, as further required by Ohio Revised Code Section 2953.08(D)(l).

**GROUND FOUR:** *Sixth and Fourteenth Amendments Due Process and Equal Protection of the Law claim, where state trial court violated right to a knowing, intelligent and voluntary plea under Crim.R. 11(C).*

**Supporting Facts:** The state trial court failed to adequately inform Petitioner Houston of the nature of the charges and the consequences of his plea relevant to the elements and degree of felony associated with his plea, thereby amounting to a structural constitutional deprivation requiring Petitioner Houston's plea be vacated. Where the state trial court completely mislead Petitioner Houston regarding the felony degree of the charge and the maximum sentence the trial court failed to substantially comply with the provisions of Crim. R. 11(C).

**GROUND FIVE:** *Sixth and Fourteenth Amendments Due Process and Equal Protection of the Law claim, where state appellate counsel failed to raise issue regarding state trial court's plain error in sentencing.*

**Supporting Facts:** Where the trial court failed to make the necessary findings pursuant to Crim.R. 11(C) and the protected liberty interest of Ohio Revised Code Section 2929.14(C)(4), Petitioner Houston was denied due process and equal protection of the law where his appellate counsel was ineffective for failure to raise the issue of the state trial court's imposition of consecutive sentences.

**GROUND SIX:** *Sixth and Fourteenth Amendments Due Process and Equal Protection of the Law claim, where state appellate counsel failed to raise issue regarding state trial counsel's failure to request a Franks hearing.*

**Supporting Facts:** As opposed to a mere traffic stop, the police committed perjury to contrive probable cause where probable cause failed to exist. Had Petitioner Houston been afforded a *Franks* hearing then he would have been able to demonstrate the illegality of the search and seizure. Appellate counsel's failure to raise this claim amounts to ineffective assistance of counsel.

3

**GROUND SEVEN:** *Sixth and Fourteenth Amendments Due Process and Equal Protection of the law claim, where state appellate court committed plain error in failing to grant Petitioner Houston's App.R.26(B) application to reopen on the ineffective assistance of appellate counsel claims relevant to failure to raise an issue as the state trial court's imposition of consecutive sentences, and the failure to argue ineffective assistance of state trial counsel relevant to the Franks hearing.*

**Supporting Facts:** The Ohio appellate court's denial of Petitioner Houston's application to reopen his appeal under App.R. 26(B) on the issue of the state appellate counsel's failure to raise issues of trial court's imposition of multiple convictions and consecutive sentences where offenses were not committed separately or with a separate animus, and the failure to argue that Petitioner Houston's trial counsel was ineffective for failing to request a *Franks* hearing.

(Petition, ECF No. 1.)

## Procedural and Factual History

Houston was originally indicted by the Scioto County Grand Jury in 2011 on two counts of trafficking in drugs (Ohio Revised Code 2925.03(A)(2)/(C)(1)(e) and 2925.03(A)(2)/(C)(1)(d))(Counts 1 and 3); two counts of possession of drugs (Ohio Revised Code 2925.11(A)(C)(1)(d) and 2925.11(A)/(C)(1)(c))(Counts 2 and 4); possession of criminal tools (Ohio Revised Code 2923.24(A)/(C))(Count 5); conspiracy to traffic in drugs (Ohio Revised Code 2923.01 and 2925.03(A)/(C)(3)(c)) (Count 6); and tampering with evidence (Ohio Revised Code 2921.12(A)(1))(Count 7). The indictment also contained a forfeiture specification. Following the denial of Houston's motion to suppress, Houston entered a no contest plea to Counts 1, 4 and 7 which the court accepted and sentenced Houston to an aggregate sentence of

4

10 years with payment of costs and a fine.

Houston appealed to the Court of Appeals of Ohio, Fourth Appellate District, Scioto

County, raising the following assignments of error:

> 1. The trial court improperly denied defendant's motion to suppress when the seizure of defendant extended beyond the time necessary to effectuate the parking violation at issue pursuant to *Townsend, Bonilla* and progeny as well as Ohio law and any evidence obtained by the resultant searches were fruit of the poisonous tree.
>
> 2. Appellant was denied effective assistance of counsel as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution when trial counsel inadequately prepared and ineffectually argued the suppression motion, and allowed and/or advised defendant to withdraw his "no contest plea" and to plead guilty thereby waiving the issue.
>
> 3. Trial court committed plain error in sentencing defendant on three separate charges of similar import that he could only be found guilty of only one [*sic*] and sentenced for only one rendering unauthorized imposed sentence a nullity or void.

(State Court Record, ECF No. 7, Exh. 7, PageID 84.)

The Fourth District set forth the facts of this case on direct appeal as follows:

> **[\*P3]** At the suppression hearing, Officer Tiffany Hedrick ("Hedrick") of the Portsmouth Police Department testified on September 9, 2011, she was on routine patrol in the "East End" of Portsmouth at 9:20 a.m. when she observed a white Chevrolet Malibu parked at an angle, obstructing traffic. The vehicle's right front tire was over twelve inches from the curb and the right rear tire approximately two to three feet from the curb. R.C. 4511.69 and Portsmouth City Ordinance 351.04 prohibit parking more than twelve inches from the curb. The "East End" is known as a high crime area due to the volume of crimes involving prostitution, drugs, thefts, and burglaries. Hedrick initiated a traffic stop on her inboard computer, ran the license plate, and discovered the vehicle was a rental car from Cleveland, Ohio. She then contacted

Patrolman Steve Timberlake ("Timberlake") because he was looking for a white vehicle earlier in the day.

[*P4] Patrolman Timberlake testified on the morning of September 9th, he received information that two black males in a white rental car were selling drugs in the Farley Square area. Earlier, Timberlake could not find them, but he notified other officers. When Hedrick contacted him, Timberlake arrived at the scene in less than two minutes. Hedrick had begun writing a parking ticket. Timberlake noted the white rental car was parked near a residence surrounded by a chain link fence. He was familiar with the residence due to his previous work assignment with the narcotics unit. Timberlake had seized a large quantity of cocaine from the previous residents, drug traffickers.

[*P5] At that point, Appellant came out of the residence. Appellant asked if there was a problem with the vehicle. Hedrick informed him it was parked illegally, and Appellant immediately went back into the house. Shortly thereafter, Appellant exited the house a second time and offered to move the vehicle. The officers told him he needed identification because they were going to issue a parking citation. Appellant then went back into the house. Soon, Appellant exited the house a third time and evasively continued around the fence and the back of the car. The officers thought he was possibly trying to get in the car and drive away. Hedrick and Timberlake again requested identification.

[*P6] Appellant then produced his ID. He acted nervous and kept trying to walk away from the officers. Timberlake testified based on Appellant's erratic and evasive actions, along with the confidential information he had heard in the morning, he did a pat-down search for weapons. During this pat-down, Appellant backed away from Timberlake. When Timberlake finished the pat-down, he told Appellant to sit on the curb while he was being detained for the warrant check.

[*P7] Lee Bower ("Bower"), a narcotics detective and canine handler testified he received a call from Timberlake on September 9th, advising him that Hedrick was with a new white Chevy on 8th Street. When he arrived, Appellant was lying down, but as he walked up to Appellant, Appellant began walking away and looking around. Bower said "Hey, you're making me nervous." Appellant replied "Well you're making me nervous." Bower asked: "Well would you feel better if you set in the back of the patrol car?" Appellant answered "Yes." He was placed in the back of Hedrick's cruiser. Appellant told

6

Timberlake his cousin was inside the house, yet he was unable to provide his cousin's name.

[*P8] Timberlake briefed Bower on Appellant's nervous, erratic and evasive actions. Bower and Timberlake proceeded to the house's front door. Hedrick went to the rear door. Sherry Dixon opened the front door and let the officers inside. Dixon advised Appellant was visiting her boyfriend, who inexplicably had just run out the back door. Bower asked for permission to search the house and Dixon gave consent. Dixon, another male, and a child were inside the house. The officers separated. Bower saw another male in the house, who ended up being co-defendant Horsley. Bower did a pat-down and requested Horsley's ID. The other officers told Hedrick to come inside the house. Bower handed Hedrick Horsley's ID, and Bower walked outside.

[*P9] Bower decided to have his canine sniff the white Malibu. Bower testified by now, he had been on the scene approximately ten minutes. The dog alerted on the driver's side door. Bower told Appellant the dog alerted. Appellant advised he had been stopped by law enforcement in West Virginia the night before and there was nothing in the car. Bower testified Appellant gave him consent to check the car. When Bower searched the car, he discovered over $13,000.00 in cash, 1000 oxycodone pills, and over 100 Opana pills. Appellant and co-defendant Horsley were subsequently arrested at the scene. Timberlake testified the warrant check was completed sometime after the officers cleared the house.

[*P10] The date of the parking ticket is listed at 9:32 a.m. by Officer Hedrick. Appellant's name does not appear on the ticket. Appellant was arrested at 9:50 a.m. Appellant did not testify at the suppression hearing. The trial court found that at the point Officer Bower asked Appellant if he would like to sit in the cruiser, Timberlake had not yet received a response to his inquiry about Houston's ID. The court found based on the totality of the circumstances, the officers conducted the issuance of the traffic ticket in a diligent manner and detained Appellant for a reasonable and lawful time. The court further found the exterior sniff of the vehicle by the canine was conducted during the time period necessary to effectuate the original purpose of the contact between the officers and the defendants.

*State v. Houston,* 2013-Ohio-686, 2013 Ohio App. LEXIS 606 (4th Dist. Feb. 7, 2013).

7

Following the briefing on the appeal, the court of appeals affirmed Houston's conviction and sentence. *Id.* On March 21, 2013, Houston filed a notice of appeal pro se with the Ohio Supreme Court which declined to exercise jurisdiction. *State v Houston*, 135 Ohio St. 3d 1470 (2013).

On May 2, 2013, Houston filed a motion pro se to file a delayed application to reopen his appeal under Ohio App. R. 26(B) citing the ineffective assistance of appellate counsel for not raising particular assignments of error on appeal. The State did not respond and the Ohio Court of Appeals granted Houston's application to reopen his appeal as to his first assignment of error only. Following briefing, the Court of Appeals affirmed the judgment of the trial court. *State v. Houston*, 2014-Ohio-2827, 2014 Ohio App. LEXIS 2769 (4th Dist. May 14, 2014). The Ohio Supreme Court declined to accept jurisdiction over a subsequent appeal. *State v. Houston*, 140 Ohio St. 3d 1441 (2014).

# ANALYSIS

## Ground One: Conviction Upon Unlawfully Seized Evidence

In his First Ground for Relief, Houston claims he was convicted on the basis of evidence seized from him in violation of his rights under the Fourth Amendment. The Warden argues this claim is not cognizable in habeas corpus on the basis of *Stone v. Powell,* 428 U.S. 465 (1976). Houston responds in the Traverse with a lengthy argument on the merits of this Fourth

Amendment claim (ECF No. 13, PageID 662-78).

Federal habeas corpus relief is not available to state prisoners who allege they were convicted on illegally seized evidence if they were given a full and fair opportunity to litigate that question in the state courts. *Stone v. Powell, supra. Stone* requires the district court to determine whether state procedure in the abstract provides full and fair opportunity to litigate, and Ohio procedure does. The district court must also decide if a Petitioner's presentation of a claim was frustrated because of a failure of the state mechanism. Habeas relief is allowed if an unanticipated and unforeseeable application of a procedural rule prevents state court consideration of merits. *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982). The *Riley* court, in discussing the concept of a "full and fair opportunity," held:

> The mechanism provided by the State of Ohio for resolution of Fourth Amendment claims is, in the abstract, clearly adequate. Ohio R. Crim. P. 12 provides an adequate opportunity to raise Fourth Amendment claims in the context of a pretrial motion to suppress, as is evident in the petitioner's use of that procedure. Further, a criminal defendant, who has unsuccessfully sought to suppress evidence, may take a direct appeal of that order, as of right, by filing a notice of appeal. See Ohio R. App. P. 3(A) and Ohio R. App. P. 5(A). These rules provide an adequate procedural mechanism for the litigation of Fourth Amendment claims because the state affords a litigant an opportunity to raise his claims in a fact-finding hearing and on direct appeal of an unfavorable decision.

*Id*. at 526.

In this case Houston received a full and fair opportunity to litigate his Fourth Amendment claim. On his motion to suppress, the trial court held an evidentiary hearing at which his counsel was able to fully cross-examine the police officers who had seized the evidence used. After he

9

pled no contest and was sentenced, he was able to raise the Fourth Amendment claim on direct appeal and to receive a thorough, considered opinion on its merits.  Houston of course disagrees with those results, but the test is not whether the state courts were correct, but whether they gave Houston a full and fair opportunity to present his claim.  *Good v. Berghuis*, 729 F.3d 636 (6th Cir. 2013).

Houston asserts Ground One is "cognizable under [the] ineffective assistance of counsel exception."  (Traverse, ECF No. 13, PageID 673.)  There is no ineffective assistance of trial counsel exception to *Stone v. Powell* known to this Court and Houston cites no case law in support of such an exception.

Merits consideration of the First Ground for Relief is barred by *Stove v. Powell* and it should be dismissed with prejudice.


**Ground Two:  Ineffective Assistance of Trial Counsel**


In his Second Ground for Relief, Houston argues he received ineffective assistance of trial counsel in that his counsel inadequately prepared for and argued the motion to suppress and advised Houston to withdraw his no contest plea and to plead guilty.  The Warden concedes this Ground for Relief is preserved for merit determination in habeas, but argues it is without merit (Return of Writ, ECF No. 8, PageID 594-602).

Houston raised this claim as his Second Assignment of Error on direct appeal and the Fourth District decided it as follows:

ASSIGNMENT OF ERROR TWO

 [*P38]  Appellant's argument that his counsel was ineffective is two-fold. First, Appellant argues his counsel allowed or advised him to withdraw a previously entered "no contest" plea and enter a guilty plea, thereby waiving his right to appeal the suppression issue. Second, Appellant argues his counsel failed to brief and properly argue the suppression motion. For the reasons which follow, we disagree with Appellant.

A. STANDARD OF REVIEW

 [*P39]  Criminal defendants have a right to counsel, including a right to the effective assistance from counsel. *McMann v. Richardson*, 397 U.S. 759, 770, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970); *State v. Stout*, 4th Dist. No. 07CA5, 2008 Ohio 1366, 2008 WL 757521, ¶ 21. To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Issa*, 93 Ohio St. 3d 49, 67, 2001 Ohio 1290, 752 N.E.2d 904 (2001); *State v. Goff*, 82 Ohio St.3d 123, 139, 1998 Ohio 369, 694 N.E.2d 916 (1998). "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *State v. Conway*, 109 Ohio St.3d 412, 2006 Ohio 2815, 848 N.E.2d 810, ¶ 95 (citations omitted). "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. No. 06CA3116, 2008 Ohio 968, 2008 WL 613116, ¶ 14. Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal*, 87 Ohio St. 3d 378, 389, 2000 Ohio 448, 721 N.E.2d 52 (2000) (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other").

 [*P40]  When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. To establish prejudice, a defendant must

11

demonstrate that a reasonable probability exists that but for counsel's errors, the result of the trial would have been different. *State v. White*, 82 Ohio St. 3d 16, 23, 1998 Ohio 363, 693 N.E.2d 772 (1998); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), at paragraph three of the syllabus. Furthermore, courts may not simply assume the existence of prejudice, but must require that prejudice be affirmatively demonstrated. See *State v. Clark*, 4th Dist. No. 02CA684, 2003 Ohio 1707, 2003 WL 1756101, ¶ 22; *State v. Tucker*, 4th Dist. No. 01CA2592, 2002 Ohio 1597, 2002 WL 507529, (Apr. 2, 2002); *State v. Kuntz*, 4th Dist. No. 1691, 1992 Ohio App. LEXIS 1020, 1992 WL 42774, (Feb. 26, 1992).

## B. LEGAL ANALYSIS

 **[\*P41]**  Appellant entered pleas to a charge of trafficking in drugs, possession of drugs, and tampering with evidence. At the sentencing hearing, the court began by reciting the terms of the agreed sentence: (1) on trafficking, Appellant would be sentenced to a five-year mandatory prison term; (2) on possession, he would be given a three-year non-mandatory prison term; and, (3) on tampering Appellant would receive a two-year prison term. The court summarized the terms as running consecutively for a ten-year prison term. At this point, the transcript reflects the sentencing was interrupted by Appellant's balking at entering a plea to the agreed sentence.

 **[\*P42]**  As to Appellant's first contention that his counsel urged him to plead guilty, the sentencing hearing transcript demonstrates Appellant's hesitation at entering a plea occurred after the court described the sentence and when it added "And there is no agreement at this point in time about a judicial release." Appellant claimed he did not agree to the sentence the court described. Although the transcript does not contain Appellant's request to terminate his counsel and hire new counsel, the record reflects a discussion in which the State proposed to proceed with the sentencing or revoke Appellant's bond. The State submitted "He can file a motion to withdraw." Shortly thereafter, the court held a bench conference with counsel, then recessed. When court resumed, the trial court addressed defense counsel and Appellant, stating, "Now, I've already stated on the record what the—what the agreement is...is that the agreement?" to which both Appellant and his counsel responded affirmatively. The court went on to note Houston would be filing an appeal.

**[\*P43]** We also take note of the judgment entry of sentence dated February 8, 2012 states as follows in the first paragraph:

> "This cause came on to be heard on the 4th day of November, 2011, upon the request of the Defendant by and through the Defendant's counsel to withdraw a former plea of no contest guilty and enter a plea of guilty."

However, the fifth paragraph of the judgment entry of sentence reads:

> "Upon Defendant's plea of no contest, the Court makes a finding of guilty to Count 1 Trafficking in Drugs with a Forfeiture Specification, in violation of Ohio Revised Code Section 2925.03(A)(2)/(C), being a felony of the first degree, Count 4 Possession of Drugs, in violation of Ohio Revised Code Section 2925.11(A), being a felony of the third degree, and Count 7 Tampering with Evidence, in violation of Ohio Revised Code Section 2921.12(A)(1), being a felony of the third degree."

In its brief, Appellee State of Ohio sets forth the following on page 24:

> "The State does not contend that the Appellant entered a guilty plea. Rather, the agreement was a no contest plea and the record reflects a no-contest plea.

Therefore, there is no issue on the point of a guilty plea."

**[\*P44]** We agree that there is no issue as to counsel's alleged ineffectiveness with regard to Appellant's plea. Although the first paragraph of the judgment entry of sentence indicates Appellant was entering a guilty plea, the fifth paragraph indicates a no contest plea. The record reflects there was an understanding that Appellant would be filing an appeal. Appellee State of Ohio has not countered in its argument in the first assignment of error that Appellant waived his rights of appeal on the suppression issue by his plea. In fact, Appellee recalls the agreement as on a no contest plea. For the above reasons, we agree with Appellee there is no issue as to Appellant's plea. As such, Appellant's argument that his counsel was ineffective as to the plea entered must fail.

**[\*P45]** Furthermore, we do not agree with Appellant's claim his

13

counsel was ineffective as relates to the briefing of the suppression motion and supplemental filing. Appellant argues the brief was vague and not specific as to the actual issue of inordinate detention. Yet, we note *State v. Chatton*, 11 Ohio St. 3d 59, 11 Ohio B. 250, 463 N.E.2d 1237 (1984) was cited in counsel's motion to suppress, along with the language regarding unlawful detentions.

[*P46] At the conclusion of the suppression hearing, Appellant's counsel requested additional time to brief the issues before the trial court rendered its decision. Appellant also argues his counsel's supplemental filing was deficient as counsel "could only muster five paragraphs-one a single sentence long." The supplemental memorandum was filed one day after the suppression hearing was concluded. The memorandum contains the succinct facts favorable to Appellant and testified to at the hearing, along with application of the *Chatton* case to the facts. We are aware of no mandate that memoranda of this nature conform to a certain length in order to be effective and moreover, the concise nature of the supplemental filing was more likely to be looked upon favorably by any court, given the evidence had already been heard. We also note that in co-counsel's closing argument, three times he agreed with arguments and fact pointed out by Appellant's counsel.

[*P47] "A properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor*, 4th Dist. No. 07CA1, 2008 Ohio 482, 2008 WL 343328, ¶ 10, citing *State v. Smith*, 17 Ohio St.3d 98, 100, 17 Ohio B. 219, 477 N.E.2d 1128 (1985). Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. *State v. Gondor*, 112 Ohio St.3d 377, 2006 Ohio 6679, 860 N.E.2d 77, ¶ 62; *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988).

[*P48] In this matter, the trial court made its decision based on all the evidence before it. Appellant has not shown that his counsel's brief, supplemental filing, or conduct was deficient, nor has he overcome the presumption that his counsel's trial strategy was sound. Based on review of the record, we find Appellant was not rendered ineffective assistance. As such, we overrule the second assignment of error.

*State v. Houston,* 2013-Ohio-686, 2013 Ohio App. LEXIS 606 (4th Dist. Feb. 7, 2013).

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S. 111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. *See Wong v.*

16

> *Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328
> (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052,
> 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably
> likely" the result would have been different. Id., at 696, 104 S. Ct.
> 2052, 80 L. Ed. 2d 674. This does not require a showing that
> counsel's actions "more likely than not altered the outcome," but
> the difference between Strickland's prejudice standard and a more-
> probable-than-not standard is slight and matters "only in the rarest
> case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The
> likelihood of a different result must be substantial, not just
> conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

Harrington, 562 U.S. at 111-12.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington*, 562 U.S. 86, (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

Houston has failed to show that the Fourth District's decision on his Second Assignment of Error is an objectively unreasonable application of *Strickland*. In the first place, regardless of any conversations Houston and his attorney may have had off the record, he eventually pleaded no contest and was convicted on that plea, fully preserving his right to appeal the suppression decision. His briefing on the motion to suppress included his seeking and receiving permission to file a supplemental memorandum on the points raised during the hearing. Finally, Houston's claim that, if properly advised, he would have gone to trial is purely conclusory – he does not suggest what defense he would have offered at trial, given the large quantity of drugs and money found in the van.

Ground Two is without merit and should be dismissed with prejudice.

**Ground Three:  Allied Offenses of Similar Import**

In his Third Ground for Relief, Houston asserts he was improperly sentenced separately on offenses which constitute allied offense of similar import and that such sentencing violates his rights under the Double Jeopardy Clause.

Respondent asserts this claim is barred by Houston's procedural default in not making a contemporaneous objection at the time of sentencing.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.  *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986);  *Engle*, 456 U.S. at 110;  *Wainwright*,

433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138; accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Houston raised this claim as his Third Assignment of Error on direct appeal and the Fourth District decided it as follows:

ASSIGNMENT OF ERROR THREE

[*P49]  Appellant contends the trial court committed plain error in sentencing him on three separate charges of similar import, trafficking, R.C. 2925.03(A)(2)/(C), possession, R.C. 2925.11(A)/(C), and tampering with evidence, R.C. 2921.12(A)(1), when he could be found guilty of only one offense and sentenced on only one offense. Appellant argues his convictions arose from one transaction on one date and time under one case number. He requests this Court to order resentencing in this matter.

## A. STANDARD OF REVIEW

[*P50]  For a reviewing court to find plain error: 1.) there must be an error, i.e., "a deviation from a legal rule", 2.) the error must be plain, i.e. "an 'obvious' defect in the trial court proceedings"; and 3.) the error must have affected "substantial rights," i.e., it must have affected the outcome of the proceedings. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002 Ohio 68, 759 N.E.2d 1240 (2002); *State v. Williams*, 4th Dist. No. 11CA3408, 2012 Ohio 4693, 2012 WL 4789848, ¶ 19. Furthermore, the Supreme Court of Ohio has admonished courts that notice of plain error under Crim.R. 52(B) is to be taken "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Id*., quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus; *Williams*, ¶ 19.

[*P51]  When determining whether multiple offenses should have merged under R.C. 2941.25, "[o]ur standard of review is de novo." (Internal citations omitted). *Williams*, supra at ¶ 82.

## B. LEGAL ANALYSIS

[*P52]  R.C. 2941.25, the multi-count statute provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts

for all such offenses, and the defendant may be convicted of all of them.

As the Supreme Court explained in *State v. Johnson*, 128 Ohio St.3d 153, 2010 Ohio 6314, 942 N.E.2d 1061, under R.C. 2941.25, "the court must determine prior to sentencing whether the offenses were committed by the same conduct." *Johnson* at ¶ 47. *Williams*, ¶ 83. The initial question is whether it is possible to commit the two offenses with the same conduct. *Johnson* at ¶ 48; *Williams* at ¶ 83. If so, we must then look to the facts of the case and determine whether the two offenses actually were committed by the same conduct, "i.e., 'a single act, committed with a single state of mind.'" *Johnson* at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008 Ohio 4569, 895 N.E.2d 149, at ¶ 50; *Williams*, at¶ 83. "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Johnson* at ¶ 50; *Williams*, at ¶ 83.

 [*P53]  "Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." *Johnson* at ¶51; *Williams* at ¶ 84.

 [*P54]  The Supreme Court of Ohio has held that the simultaneous possession of different types of controlled substances can constitute multiple offenses under R.C.2925.11. *State v. Delfino*, 22 Ohio St.3d 270, 22 Ohio B. 443, 490 N.E.2d 884 (1986), at syllabus; *State v. Westbrook*, 4th Dist. No. 09CA3277, 2010 Ohio 2692, 2010 WL 2354018, at ¶ 42. [R.C. 2925.11(A) states: "No person shall knowingly obtain, possess, or use a controlled substance." A controlled substance is defined as any substance listed in Schedules I through V under R.C. 3719.41 and as amended by R.C.3719.43 and R.C. 3719.44. See R.C. 2925.01(A) and R.C. 3719.01(C); *Westbrook* at ¶ 42. Depending on the type of controlled substance involved, R.C. 2925.11(C) provides the title of and penalty for the offense. The legislature clearly intended that possession of different drug groups constitutes different offenses. *Delfino* at 274, 490 N.E.2d 884; *Westbrook* at ¶ 43.

 [*P55]  In this case, Appellant was sentenced on count one, trafficking in drugs, Oxycodone, a violation of R.C. 2925.03(A)(2)(C)(1)(e) and count four, possession of drugs, Oxymorphone, a violation of R.C. 2925.11(A)(1)(C)(1). [FN 2

We note the complete Revised Code sections are contained in the indictment, not in the judgment entry of sentence. The entry also lists Count 4, Possession of Drugs, as a felony of the third degree. Appellee's brief appropriately references the conviction as a felony of the second degree.] Oxycodone is listed under R.C. 3719.41(2)(A)(1)(n), and is a Schedule II drug. Oxymorphone is also a Schedule II drug, listed under R.C. 3719.41(2)(A)(1)(o). Under R.C. 2925.03(A)(2) (C)(1)(e), person who traffics a controlled substance if the amount of the drug involved equals or exceeds fifth times the bulk amount but is less than one hundred times the bulk amount is guilty of "aggravated trafficking in drugs." Oxycodone is a Schedule II controlled substance. R.C. 3719.41 Schedule II(A)(1)(n). Appellant committed a first degree felony under R.C. 2925.03(A)(2)(C)(1)(e) because the amount of Oxycodone confiscated was equal or exceeded fifty times the bulk amount but was less than one hundred times the bulk amount. There are cases in which merging allied offenses for sentencing may be appropriate, where a person convicted of trafficking in a controlled substances also effectively possesses, and is convicted, of that same controlled substance. *State v. Lewis*, 4th Dist. No. 08CA3226, 2008 Ohio 6691, 2008 WL 5266102(case remanded for consideration of whether possession and trafficking in crack cocaine were committed separately or with a separate animus); *State v. Westbrook*, 4th Dist. No. 09CA3277, 2010 Ohio 2692, 2010 WL 2354018 (sentences for possessing and trafficking oxycodone vacated and remanded for new sentencing under either R.C. 2925.03(A)(2) or R.C. 2925.11(A).).

**[*P56]** Under R.C. 2925.11(A)(C)(1)(c), a person who possesses a controlled substance if the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount is guilty of "aggravated possession of drugs." Oxymorphone is also a Schedule II controlled substance. R.C. 3719.41, Schedule II, (A)(1)(o). Appellant committed a felony of the second degree under R.C. 2925.11(A)(C)(1)(c) because the amount of Oxymorphone he possessed equaled or exceeded five times the bulk amount but less than fifty times the bulk amount. R.C. 2925.03(A)(2)(C)(1)(e) and R.C. 2925.11(A)(C)(1)(c) each required proof of different facts, i.e., here, the different drugs and different amounts, to establish violations of the Revised Code. Therefore, they are not allied offenses of similar import. The legislature clearly intended that possession of different drug groups constitutes different offenses. *Delfino* at 274, 490 N.E.2d 884; *Westbrook*, at ¶ 43. Here, the facts show that not only are there different drugs involved, but also different bulk amounts. Merger as allied offenses is simply not correct in this matter.

22

[*P57] Finally, tampering with evidence, R.C. 2921.12, provides as follows:

> (A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
>
>> (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;
>>
>> (2) Make, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official who is or may be engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation.
>
> (B) Whoever violates this section is guilty of tampering with evidence, a felony of the third degree.

The offense of tampering with evidence is not allied to either of the above-discussed offenses.

[*P58] Appellee has pointed out in its brief, the sentence was an agreed sentence, pursuant to R.C. 2953.08(D)(1). R.C. 2953.08(D)(1) provides:

> "A sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge."

[*P59] Inasmuch as we have determined Appellant's sentence was authorized by law, we also note it was an agreed sentence. The transcript and the judgment entry of sentence reflect this. We find no error, let alone plain error, in the trial court's sentencing of Appellant.

*State v. Houston, supra.*

Houston was required to seek plain error review on appeal because he had not made a

contemporaneous objection under the allied offenses statute.  Ohio's contemporaneous objection rule — that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998) — is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir.  2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v.  Bradshaw*, 482 F.3d 442 (6th Cir.  2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005);   *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing  Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982).  *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 131 S. Ct. 185 (2010).

An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl*, 668 F.3d at 337; *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros*, 422 F.3d at 387; *Hinkle,* 271 F.3d 239, *citing Seymour*, 224 F.3d at 557 (plain error review does not constitute a waiver of procedural default); *accord, Mason,* 320 F.3d 604.   Therefore Houston's argument that the Fourth District did not enforce the contemporaneous objection rule when it conducted plain error review is not well taken.

Houston claims that, even if this Ground for Relief was procedurally defaulted, "the ineffective assistance of Houston's state trial and appellate counsel would constitute cause and prejudice sufficient to excuse the default."  (Traverse, ECF No. 13, PageID 681.)  Appellate

counsel was not ineffective in failing to raise this claim as he did in fact raise it as the Third Assignment of Error.  Trial counsel was not ineffective because, as the Fourth District pointed out, the claim was without merit because the three counts of conviction were not allied offenses of similar import.

If the Court were to reach the merits, it would find that sentencing on the three separate counts did not violate any liberty interest protected by Ohio Revised Code § 2941.25 because the Fourth District decided there was no violation of the statute and this Court is bound by that court's interpretation of state law.  To the extent a Double Jeopardy claim is involved, there is no violation of the separate element test in *United States v. Dixon*, 509 U.S. 688, 696 (1993), and *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  Different elements are involved in the three offenses of conviction, possession of a certain quantity of Oxycodone for one count and possession of a different amount of Oxymorphone for another.  As the Fourth District pointed out, the Ohio Supreme Court has held that simultaneous possession of different controlled substances constitutes separate offenses.  *State v. Houston, supra,* at ¶ 54, citing *State v. Delfino,* 22 Ohio St. 3d 270 (1986).  Tampering with evidence requires different elements altogether.

Accordingly Ground Three should be dismissed with prejudice.


**Ground Four:  Involuntary Plea**


In his Fourth Ground for Relief, Houston claims his plea was not knowing, intelligent, and voluntary, the constitutional requirements for a valid no contest or guilty plea.

Respondent asserts this claim is procedurally defaulted because it was not fairly presented to the state courts as a federal constitutional claim.  The Court disagrees.  This claim

was argued to the state court of appeals as a violation of Ohio R. Crim. P. 11, but that rule embodies Ohio's procedure to enforce the federal constitutional rights that Houston claims were violated. *State v. Johnson*, 40 Ohio St. 3d 130 (1988). The Court concludes that Houston's state court argument in terms of Ohio R. Crim. P. 11 fairly preserved Ground Four for merits review in this Court. See *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987); *accord*, *Whiting v. Burt*, 395 F.3d 602 (6th Cir. 2005); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000).

The Fourth District Court of Appeals considered this claim on the merits after granting Houston's Ohio App. R. 26(B) application to reopen his direct appeal. It held as follows:

> ASSIGNMENT OF ERROR"I. THE TRIAL COURT LACKED JURISDICTION, VIOLATED CRIM.R. 11(C)(2) AND BREACHED THE NOVEMBER 4, 2011 PLEA AGREEMENT, WHEN IT GAVE APPELLANT THE MAXIMUM PENALTY FOR COUNT (4) AS A FELONY OF THE THIRD DEGREE WHEN COUNT (4) IS A FELONY OF THE SECOND DEGREE. APPELLANT'S PLEA WAS NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY MADE."
>
> [*P4] Appellant argues the trial court lacked jurisdiction to convict and sentence him when it failed to give him the correct maximum penalty, pursuant to Crim.R. 11(C) on November 4, 2011. Appellant argues the trial court completely misled him as to the maximum sentences and the correct maximum fines for a felony of the second degree as charged in the indictment. Appellee responds that under the totality of the circumstances, Appellant subjectively knew he was pleading to a felony of the third degree, that it was to his advantage to plead to a felony of the third degree, and that the trial court substantially complied with informing Appellant of the maximum sentence for the offense to which Appellant pled.[FN 1 Appellee also points out the felony of the third degree to which Appellant entered his plea is a lesser included offense of the second degree felony of which Appellant was indicted.]
>
> [*P5] Appellant was indicted on September 16, 2011. The indictment lists Count 4, R.C. 2925.11(A)/(C)(1)(c), possession of drugs, as a felony of the second degree. The record reveals an October 4, 2011 bond agreement which lists Count 4 as a felony of the second degree. However, on November 4, 2011 at the change

26

of plea hearing, the transcript shows Count 4 was referenced as a felony of the third degree. On that date, Appellant signed a "Maximum Penalty" form listing Count 4 as a felony three. On the same date, Appellant signed a "Waiver" form listing Count 4 twice as a felony of the third degree, and specifically as "Possession of Drugs, in violation of Ohio Revised Code Section 2925.11(A), a felony of the third degree." At the sentencing hearing on February 2, 2012, Count 4 continued to be referenced as a felony of the third degree.

[*P6] Appellant claims his plea was not knowing and intelligent because the trial court failed to advise him of the maximum penalty for Count 4 as contained in the indictment, pursuant to Crim. R. 11(C)(2). The portion of Crim.R. 11(C)(2), relevant here, provides:

> "In felony cases the court * * * shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing."

[*P7] In determining whether to accept a guilty plea, the trial court must determine whether the defendant has knowingly, intelligently, and voluntarily entered the plea. *State v. Puckett*, 4th Dist. Scioto No.03CA2920, 2005-Ohio-1640, ¶9; *State v. Johnson*, 40 Ohio St.3d 130, 532 N.E.2d 1295 (1988), syllabus; Crim.R.11(C). To do so, the trial court should engage in a dialogue with the defendant as described in Crim.R.11(C). *Puckett*, ¶9

[*P8] Ohio courts have determined that although literal compliance with Crim.R.11(C)(2)(a) is preferred, it is not an absolute requirement. *State v. Caplinger*, 105 Ohio App.3d 567, 664 N.E.2d 959 (4th Dist. 1995). Rather, the trial court's actions will be reviewed for "substantial compliance" with Crim.R. 11(C)(2)(a). *Id.*, at ¶¶5,6; *Johnson*, 532 N.E.2d at 1298; *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474, 476-477 (1990). "Substantial compliance means that under the totality of the circumstances, the defendant subjectively understands the implications of his plea and the rights he is waiving." *Caplinger,*

*supra*, quoting *State v. Carter*, 60 Ohio St.2d 34, 38, 396 N.E.2d 757, 759-760 (1979). (Internal citations omitted.). In other words, it appears from the record that the defendant appreciated the effect of his plea and his waiver of rights in spite of the trial court's error, there is still substantial compliance. *State v. Nero*, 564 N.E.2d at 476-477. Furthermore, an appellant who challenges his plea on the basis that it was not knowingly and voluntarily made must show a prejudicial effect. *Nero, supra*, citing *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977); Crim.R. 52(A). The test is whether the plea would have otherwise been made. *Stewart, supra* at 93, 364 N.E.2d at 1167.

[*P9]    In general, the failure of a trial court to properly inform a defendant of the maximum penalty applicable to his offense is reversible error. *Caplinger, supra* at 7; *State v. Gibson*, 34 Ohio App.3d 146, 146-148, 517 N.E.2d 990 (8th Dist. 1996). Ohio law also provides a trial court is required to inform a defendant of the maximum penalty for each offense. *State v. Wicks*, 8th Dist. Cuyahoga No. 98236, 2013-Ohio-1340, ¶11. Appellant directs us to *State v. Calvillo*, 76 Ohio App.3d 714, 603 N.E.2d 325 (8th Dist.1991), which held:

> "Crim.R. 11(C)(2)(a) requires that a defendant be informed of the 'maximum penalty involved.' The record clearly demonstrates defendant was not so informed. Even though defendant ended up with a sentence less harsh than that which he thought he would receive, it is conceivable that defendant may have not entered a plea if he believed the sentence to be less harsh."

[*P10]  In this case, the record reflects Count 4 of the original indictment was charged as a felony of the second degree. A subsequent bond agreement reflected Count 4 as a felony of the second degree. Thereafter, Count 4 was referenced in the pleadings and transcripts as a felony of the third degree. Appellant points out the charge was never amended to a third degree felony. .[FN 2 Count 4, as a felony of the second degree, is correctly noted in our February 7, 2013 opinion in *Houston, supra* at ¶56. We also mirror the trial court's record by referencing the November 4, 2011 transcript of the change of plea hearing, in which Count 4 is incorrectly referenced as a felony of the third degree. *Houston, supra* at ¶46. The February 8, 2012 judgment entry of sentence also contains the incorrect reference.] The transcript of the November 4, 2011 change of plea hearing sheds some light on Appellant's understanding of the nature of his plea, the terms of the

plea agreement, and the sentence he would likely receive. The trial court addressed Appellant as follows:

> The Court: Please be seated. The record will reflect we're here on 11CR791, captioned State of Ohio versus Marco D. Houston. It's the court's understanding that Mr. Houston's prepared to change his plea to Count 1, the charge of Trafficking in Drugs, a felony of the first degree, in violation of 2925.03(A)(2)/(C); Count 4 possession of drugs, a felony of the third degree in violation of 2925.11(A), and Count 7 Tampering- - Tampering with Evidence with a forfeiture specification. This will be a felony- - let's see Felony 2- -

> Mr. Apel: Counts 4 and 7 are both felony 3's.

> The Court: 3's, okay. They didn't write that on here. That would be in violation of 2921.12(A)(1). The record should further reflect it's a negotiated plea pursuant to Section 2953.08(D) and Criminal Rule 11F, that on Count 1, the charge of Trafficking in Drugs, the defendant will receive a five year mandatory prison sentence, and on Count 4, Possession of Drugs, a felony of the third degree, he will receive a three year prison sentence, nonmandatory, and on Count 7 he will receive a two year prison term, nonmandatory, all running consecutively with each other for an aggregate ten year prison term, and also that the sum of $15, 151.00 will be forfeited to the State of Ohio. Mr. Mearan, is this your understanding, sir?

> Mr. Mearan: That's correct, Your Honor.

> The Court: Okay. And Mr. Houston, is this your understanding?

> Defendant: Yes.

> The Court: You understand by proceeding in this fashion, sir, you're waiving your right to appeal?

> Mr. Mearan: No, Your Honor, that's - -

> Defendant: No. No.

> Mr. Mearan: That's not- -

The Court: That's right; it's a no contest plea. I — I take that back.

Mr. Mearan: We- - we are preserving the right to appeal –

The Court: Yes.

Mr. Mearan: The Motion to Suppress.

The Court: I knew that, but this comes out of my mouth by habit because I do so many of them, and we don't —

Mr. Mearan: I understand.

The trial court went on to discuss all of Houston's constitutional rights with him, as well as the written waiver of rights. In particular, this exchange occurred:

The Court:  You've been *advised by your lawyer and by the court of the charges against you, the penalties provided by law, and your rights under the Constitution*, (emphasis added) and you've waived a reading of the indictment by signing this document titled waiver. Sir, is that you're signature?

Mr. Mearan: Yes.

Defendant: Yes.

Later in the change of plea hearing, this exchange took place:

The Court:  Sir, the felony of the first degree actually carries a maximum prison term of ten years, a maximum fine of $20,000.00, and both the felony 3's carry a maximum prison terms of five years, maximum fines of $10,000.00, *but it's been negotiated between yourself and the State of Ohio that you will receive on- - on the Court 1 a five year mandatory prison term, on Count 4 a three year non-mandatory term*, (emphasis added) and on Count 7 a two year non-mandatory prison term; is that your understanding?

Defendant: Yes. [FN 3 Attorney Apel, on behalf of the Prosecutor's office, interrupted to point out that under the

new sentencing law, House Bill 86, the maximum sentence on Counts 4 and 7 was three years, not five.] Further, Appellant signed a "Maximum Penalty" form and a "Waiver" setting forth his constitutional rights. The waiver indicates counsel had explained the maximum penalties to him. On both forms, Count 4 is listed as a felony of the third degree.

[*P12] Under the unique circumstances of this case, we find the trial court substantially complied with Crim. R. 11(C)(2) in advising Houston of the maximum penalties associated with the charge to which he entered his plea, a felony of the third degree. The record reflects Appellant understood his constitutional rights, and understood he was entering into an agreed sentence. The trial court referenced the fact the sentence was negotiated and cited the statute regarding agreed sentences. Furthermore, the record shows Appellant realized he was planning to pursue an appeal, on the issue of the suppression motion. Appellant verbally acknowledged he understood his constitutional rights and the proceedings. He also signed forms acknowledging he understood his constitutional rights and the sentence to which he had agreed. In particular, Appellant acknowledged to the trial judge in open court that his attorney had explained the charges to him and the associated penalties. Appellant's plea and sentence on a felony of the third degree was consistent with the explanation he was given and by all forms signed by him. Knowledge of the maximum penalties is a nonconstitutional right and the trial court substantially complied with advising him as to the maximum penalties.

[*P13] There is confusion surrounding how Count 4 came to be designated a felony of the third degree. We conclude it was likely the result of a scrivener's error. There is no record of its being amended. However, Appellant pled to a felony of the third degree and was given the maximum sentence of Count 4 as felony of the third degree. The journal entry of sentence further demonstrates that all remaining counts of the indictment were dismissed. The journal entry of sentence had the effect of dismissing Appellant's second degree felony.

[*P14] We further observe it was in Appellant's interest to plead to a three-year sentence, when a felony of the second degree could have yielded a sentence of up to eight years. R.C.

31

2925.11(C)(1)(c); R.C. 2929.14. Appellant subjectively knew he was pleading to a felony of the third degree and was informed of the correct sentence. We find it difficult to believe that his plea would have otherwise not been made. Under these circumstances, Appellant is unable to show a prejudicial effect.

[*P15] Finally, the record reveals Appellant entered into an agreed sentence. A defendant's right to appeal a sentence is based on specific grounds stated in R.C. 2953.08(A):

> "In addition to any other right to appeal and except as provided in division (D) of this section, a defendant who is convicted of or pleads guilty to a felony may appeal as a matter of right the sentence imposed upon the defendant on one of the following grounds:
>
> *                             *                             *
>
> (4) The sentence is contrary to law." *State v. Underwood*, 124 Ohio St. 3d 365, 922 N.E.2d 923, ¶ 10-13, 2010 Ohio 1.

[*P16] Subsection (D)(1) provides an exception to the defendant's ability to appeal:

> A sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge." *Underwood, supra at* ¶15.

[*P17] A sentence that is "contrary to law" is appealable by a defendant; however, an agreed-upon sentence may not be if (1) both the defendant and the state agree to the sentence, (2) the trial court imposes the agreed sentence, and (3) the sentence is authorized by law. R.C. 2953.08(D)(1); *Underwood,* at ¶16. If all three conditions are met, the defendant may not appeal the sentence.[FN 4 A sentence is "authorized by law" and is not appealable within the meaning of R.C. 2953.08(D)(1) only if it comports with all mandatory sentencing provisions. *Underwood*, *supra* at ¶20. A trial court does not have the discretion to exercise its jurisdiction in a manner that ignores mandatory statutory provisions. *Id*. The *Underwood* court also noted its holding did not prevent R.C. 2953.08(D) from barring appeals that would otherwise challenge the court's discretion in imposing a sentence,

such as whether consecutive or maximum sentences were appropriate under certain circumstances. *Id*. at ¶22.] In *State v. Royles*, 1st Dist. Hamilton No. C-060-875, C-060-876, 2007-Ohio-5348, ¶10, the 1st District Court of Appeals held while it could not review an agreed sentence, it could review the validity of the plea leading to the agreed sentence. Here, we have found the trial court substantially complied with advising Appellant of the maximum sentence for Count 4. Thus, his plea is valid.

 [*P18]  Appellant indicated on the record at his change of plea hearing that he understood he would be receiving three years on Count 4, and that he would receive a total aggregate sentence of ten years. Appellant's sentence was jointly recommended, imposed by the sentencing judge, and authorized by law. In *State v. Adkins*, 4th Dist. Washington No. 11CA30, 2012-Ohio-2445, ¶9, we discussed the Supreme Court of Ohio's "authorized by law" requirement, as set forth in *Underwood, supra.* As the *Underwood* court explained:

> "[A] sentence is 'authorized by law' and is not appealable within the meaning of R.C. 2953.08(D)(1) only if it comports with all mandatory sentencing provisions. *Id.* at ¶20. In other words, 'when a sentence fails to include a mandatory provision, it may be appealed because such a sentence is 'contrary to law' and is also not 'authorized by law.'" *Underwood, supra* at ¶21.

 [*P19]  We have found the trial court substantially complied with Crim.R. 11(C)(2). Further, Appellant's sentence complies with the requirements set forth in *Underwood* and therefore, is authorized by law. His sentence is, therefore, not subject to review. As such, we overrule the assignment of error and affirm the judgment of the trial court.

*State v. Houston*, 2014-Ohio-2827, 2014 Ohio App. LEXIS 2769 (4th Dist. May 14, 2014).

As noted above, when a state court decides a question of federal constitutional law later raised in a habeas petition, the federal court must defer to that decision unless it is an objectively unreasonable application of clearly established constitutional law.

Houston asserts the state court's conclusion is contrary to or an objectively unreasonable application of *Henderson v. Morgan*, 426 U.S. 637 (1976). *Henderson* holds that, in order for a

plea to be voluntary, the pleading defendant must understand the constitutional rights being waived and the nature of the charges. Houston does not claim he did not understand the rights he was waiving, but that he understood he was pleading to Count Four of the indictment as a felony of the third degree, whereas it was charged in the Indictment as a felony of the second degree.

As both the court of appeals and the Respondent point out, if any mistake was made, Houston got the benefit of that mistake because (1) possession of drugs as a third degree felony is a lesser-included offense of possession as a second degree felony, (2) the trial judge and Houston's counsel treated Count Four as if it were a third-degree felony, including advising Houston of the maximum penalty for a third-degree possession felony; (3) Houston agreed on a sentence, making his sentence non-appealable under Ohio law; and (4) Houston's sentence on Count Four is a lawful sentence for felony three drug possession. In effect the Ohio courts treated Count Four as implicitly amended to charge a third-degree felony, to which Houston pleaded no contest. The plea colloquy accurately reflects this understanding. Houston's suggestion that, had he known the indictment charge a second-degree felony, "[h]e may have chose [sic] not to accept a plea . . . he may have chose [sic] to go to trial on the second degree offense" (PageID 687) is completely incredible. He offers no explanation of why a rational person who is being treated as having been charged with drug possession with a maximum penalty of three years would reject that state of affairs and insist on proceeding with a charge carrying a maximum of eight years.

The Court finds that the trial court substantially complied with Ohio R. Crim. P. 11 and that satisfies the constitutional requirements for a voluntary plea. Ground Four should be dismissed with prejudice.

**Ground Five:  Ineffective Assistance of Appellate Counsel**

In his Fifth Ground for Relief, Houston claims he received ineffective assistance of appellate counsel when his appellate attorney failed to raise the trial court's plain error in sentencing when it failed to require that the trial judge make the requisite findings under state law for imposition of consecutive sentences.  Respondent does not dispute that this claim is preserved for merits determination.

Houston raised this claim in his Application for Reopening under Ohio R. App. P. 26(B). As his second omitted assignment of error, he asserted "[t]he trial court erred to the prejudice of the Appellant when it failed to make the necessary findings required under R.C. 2929.14(C) for the imposition of consecutive sentences."  (Quoted at *State v. Houston*, Case No. 12CA3472 (4th Dist. Sept. 6, 2013)(unreported, copy at Doc. No. 7, Exh. 32, PageID 273, et seq.)  The court of appeals rejected it because the underlying claim had no merit as there was an agreed sentence in this case, making the sentence non-appealable.  *Id.*  at  PageID 290-94, ¶¶ 28-32.

Houston responds that this decision is an unreasonable application of Supreme Court law, but he cites no cases (Traverse, ECF No. 13, PageID 694).  His argument is that Ohio Revised Code § 2929.14(C)(4), the statute that purportedly protects his right to certain findings before consecutive sentences are imposed under Ohio law, creates a protected liberty interest.

State law can create protectible liberty interests.  *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454 (1989). To create such a liberty interest, the State must use "'explicitly mandatory language,' i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow, in order to create a liberty interest."  *Id.* at 463*, citing Hewitt v. Helms*, 459 U.S. 460, 471-72 (1983).

State-created procedural rights that do not guarantee a particular substantive outcome are not protected by the Fourteenth Amendment, even where such procedural rights are mandatory. *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993). A hearing right does not command a particular substantive outcome and therefore does not create a liberty interest. *Fields v. Henry Cty.*, 701 F.3d 180 (6th Cir. 2012).

Because they are part of Ohio's sentencing scheme, the consecutive sentence findings statute should be read *in pari materia* with the agreed sentence statute, as the Fourth District did in this case. Thus as that court concluded, there is no procedural right to consecutive sentence findings when there is an agreed sentence. Moreover, the procedural right to the findings, independent of the agreed sentence statute, does not create a right to a certain outcome, but only to a particular procedure and thus does not create a protected liberty interest under the Due Process Clause.

Ground Five should be dismissed with prejudice as without merit.


**Ground Six: Ineffective Assistance of Appellate Counsel Regarding a *Franks* Hearing**


In his Sixth Ground for Relief, Houston claims he received ineffective assistance of appellate counsel when his appellate attorney did not claim his trial attorney was ineffective for failure to raise a *Franks v. Delaware* issue. Houston raised this claim as his third omitted assignment of error in the App. R. 26(B) proceedings and the Fourth District decided it as follows:

> {¶11} For purposes of chronological order, we begin with Houston's third assignment of error. Houston argues his appellate counsel should have argued Houston was denied due process of law by not being able to discover the identity of the confidential

informant the Portsmouth police officers referenced in his suppression hearing, whether the informant was credible and reliable, and whether or not there was an actual informant. Houston argues his counsel should have requested a *Franks* hearing to discover this information. Houston contends the record is devoid of any facts or evidence which demonstrate there was an actual confidential informant in this case. We disagree with Houston's arguments under this assignment of error.

{¶**12**} Houston's trial counsel filed a motion to suppress. At Houston's suppression hearing, Officer Lee Bower testified he received a phone call from Officer Timberlake. Timberlake advised him a reliable informant indicated there was a car from out of town, a new white Chevy. When Officer Timberlake testified, he indicated he had received information from a confidential informant that there were two males in a new white vehicle that were selling drugs in the area. During the hearing, Houston's trial counsel did not explore follow-up questions with either officer regarding the confidential informant.

{¶**13**} Our court has stated, "[A] '*Franks* Hearing' is typically conducted in conjunction with a motion to suppress evidence." *State v. Taylor*, 4th Dist. No. 10CA3339, 2010-Ohio-6580, 2010 WL 5621535, ¶ 19. See, e.g., *State v. Roberts*, 62 Ohio St. 2d 170, 177, 405 N.E. 2d 247 (1980); also see, e.g. *State v. Gales*, 143 Ohio App. 3d 55, 60, 757 N.E.2d 390 (8th Dist. 2001); *State v. Harrington*, 1st Dist. Nos. C-0800547 & C-0800548, 2009-Ohio-5576, 2009 WL 3400931, at¶¶ 6-10. The gist of *Franks* is that if a credible challenge is made to the veracity of an affidavit used to secure a search warrant, a hearing must be afforded the defendant to allow him to proffer evidence to show that the information in the affidavits were intentionally or recklessly false. *Taylor*, *supra* at ¶ 18. See, also, *State v. Berry*, 8th Dist. No. 87493, 2007-Ohio-278, 2007 WL 184655, ¶ 35.

{¶14} Houston's case did involve the warrantless search of his rental vehicle. When Officer Hedrick first discovered Houston's vehicle, it was illegally parked. As we pointed out in his direct appeal, the independent source doctrine is applicable to Houston's case.  Evidence discovered in a warrantless search is not derived from a constitutional violation if the evidence would inevitably have been discovered during the course of a lawful investigation. Houston,¶34. "Although society generally respects a person's expectations of privacy in a dwelling, what a person chooses voluntarily to expose to public view thereby loses its Fourth Amendment protection. Houston, ¶ 35, citing California v. Ciraolo,

476 U.S. 207,213, 106 S. Ct. 1809, 1812-1813 (1986); State v. Buzzard, ¶15.  Generally the police are free to observe whatever may be seen from a place where they are entituted to be. *Houston*, supra, citing *Florida v. Riley*, 488 U.S. 445, 449, 109 S. Ct. 693, 696 (1989); *Buzzard*, ¶15.

{**¶15**} In Houston's direct appeal, counsel did not raise this issue. However, we do not think the argument had a reasonable probability of success. Houston's vehicle was not searched pursuant to a search warrant. Officer Hedrick came upon Appellant's illegally parked vehicle while on routine patrol. She alerted the other officers, knowing they were looking for the white vehicle. Had Appellant never shown up at the scene, there would still have been a lawful canine sniff of the vehicle without the permission of Appellant. Additionally, the testimony revealed Appellant gave permission for the canine sniff. As such, we do not find Houston's appellate counsel was deficient for failing to raise this issue. Had he done so, we do not find the outcome of Houston's appeal would have been different. As such, this assignment of error does not have a reasonable probability of success on appeal, and thus, we overrule this portion of Houston's motion.

(Quoted at *State v. Houston*, Case No. 12CA3472 (4th Dist. Sept. 6, 2013)(unreported, copy at

Doc. No. 7, Exh. 32, PageID 279-82.)

Respondent argues Ground Six is without merit for the reasons given by the Fourth

District, to wit, that there was no search warrant issued here and therefore no occasion for a

*Franks* hearing to determine if the affidavit underlying the warrant was perjured (Return of Writ,

ECF No. 8, PageID 624-27).  Houston makes no substantive response (Traverse, ECF No. 13,

PageID 695).  Ground Six should therefore be dismissed with prejudice.

**Ground Seven:  Error in Failure to Grant Reopening**

In his Eighth Ground for Relief, Houston argues the Fourth District committed plain error

in failing to reopen his direct appeal on the consecutive sentence and *Franks* hearing issues.

Because the Fourth District correctly found there was no merit to either of those claims, it did not

commit any error in refusing to reopen the appeal to permit those claims to be reargued.


**Conclusion**


Based on the foregoing analysis, it is respectfully recommended that the Petition herein

be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion,

Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth

Circuit that any appeal would be objectively frivolous and therefore should not be permitted to

proceed *in forma pauperis*.


January 12, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the
proposed findings and recommendations within fourteen days after being served with this Report
and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen
days because this Report is being served by one of the methods of service listed in Fed. R. Civ.
P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected
to and shall be accompanied by a memorandum of law in support of the objections. If the Report
and Recommendations are based in whole or in part upon matters occurring of record at an oral
hearing, the objecting party shall promptly arrange for the transcription of the record, or such
portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the
assigned District Judge otherwise directs. A party may respond to another party's objections
within fourteen days after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).